UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------- X
 ART ASSURE LTD., LLC,                                                   :

                              Plaintiff,                                 :

                           -against-                                     :
                                                                             14-cv-3756 (LGS)
ARTMENTUM GMBH, MICHAEL SCHULZ, THOMAS                                   :
BURKHALTER, ELIANE PIDOUX, INTERNATIONAL
CORPORATE ART CONSULTING, KEVIN WYNN,                                    :
KLAUS MACIEJEWSKI, HANS-BERT MOLL, and DZ
PRIVATBANK (SCHWEIZ) AG,                                                 :

                              Defendants.                                :

----------------------------------------------------------------------- X


**ARTMENTUM DEFENDANTS' MEMORANDUM OF LAW (1) IN REPLY TO
PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS THE COMPLAINT,
AND (2) IN OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR DISCOVERY**

**SULLIVAN & WORCESTER LLP**

Nicholas M. O'Donnell
Nita Kumaraswami
One Post Office Square
Boston, Massachusetts 02109
Telephone: (617) 338-2800
Facsimile:  (617) 338-2880
Email: nodonnell@sandw.com
           nkumaraswami@sandw.com

*Attorneys for Defendants Artmentum GmbH,
Michael Schulz, Thomas Burkhalter, Eliana Pidoux,
International Corporate Art Consulting, Kevin
Wynn, and Klaus Maciejewski*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... ii

INTRODUCTION ........................................................................................................1

BACKGROUND ..........................................................................................................2

ARGUMENT ...............................................................................................................6

I. THERE IS NO PERSONAL JURISDICTION OVER THE ARTMENTUM
   DEFENDANTS ......................................................................................................6

    A. THERE IS NO JURISDICTION PURSUANT TO CPLR § 302(a)(1) ......................................6

    B. THERE IS NO JURISDICTION UNDER CPLR § 302(a)(3)(ii) EITHER ..............................8

    C. ART ASSURE'S CLAIMS OFFEND DUE PROCESS ...........................................................9

II. ART ASSURE AND EDELMAN AGREED TO ARBITRATE THEIR CLAIMS ..............10

III. NOTHING WARRANTS A FISHING EXPEDITION TO RESTATE THE RECORD .......14

IV. ART ASSURE'S RESPONSE IS CONSISTENT WITH ITS PRINCIPAL'S RECENT
    LITIGATION OVER HIS FINANCIAL SHORTCOMINGS ..........................................15

CONCLUSION ..........................................................................................................18

# TABLE OF AUTHORITIES

## CASES

*Allied Dynamics v. Kennametal, Inc.*
  965 F. Supp. 2d 276 (E.D.N.Y. 2013) ......................................................................... 9

*Bluefire Wireless, Inc. v. Cloud9 Mobile Commc'ns, Ltd.*,
  09 CIV. 7268 (HB), 2009 WL 4907060 (S.D.N.Y. Dec. 21, 2009) .................................. 12, 14

*Cleopatra Kohlique, Inc. v. New High Glass, Inc.*
  652 F. Supp. 1254 (E.D.N.Y. 1987) .......................................................................... 9

*Cosmetech Int'l LLC v. Der Kwei Enter. & Co., Ltd.*,
  943 F. Supp. 311 (S.D.N.Y. 1996) ............................................................................ 7

*Credit Suisse Secs. v. Hilliard*,
  469 F. Supp. 2d 103 ........................................................................................... 7

*Crewe v. Rich Dad Educ., LLC*,
  884 F. Supp. 2d 60 (S.D.N.Y. 2012) ...................................................................... 11, 12

*Deutsche Bank Secs., Inc. v. Mont. Bd. of Invs.*,
  21 A.D. 3d 90 (1st Dep't 2005) ................................................................................ 7

*Deutsche Bank Sec., Inc. v. Mont. Bd. of Invs.*,
  7 N.Y.3d 65 (2006) .......................................................................................... 10

*Ehrlich-Bober & Co. v. Univ. of Houston*,
  49 N.Y.2d 574 ................................................................................................. 8

*Gasarch v. Ormand Indus., Inc.*,
  346 F. Supp. 550 ............................................................................................... 8

*Greater N.Y. Auto. Dealers Ass'n. v. Envtl. Sys. Testing, Inc.*,
  211 F.R.D. 71 (E.D.N.Y. 2002) ............................................................................... 13

*HBK Master Fund L.P. v. Troika Dialog USA, Inc.*,
  85 A.D.3d 665 (1st Dep't 2011) ............................................................................... 7

*Levisohn, Lerner, Berger & Langsam v. Med. Taping Sys., Inc.*,
  10 F. Supp. 2d 334 (S.D.N.Y. 1998) .......................................................................... 8

*Magi XXI, Inc. v. Stato della Citta del Vaticano*,
  714 F.3d 714 (2d Cir. 2013) .................................................................................. 12

*Motorola Credit Corp. v. Uzan* ,
  388 F.3d 39 (2d Cir. 2004) ............................................................................... 12-13

*Park-Bernet Galleries, Inc. v. Franklyn*,
   26 N.Y.2d 13 (1970) ................................................................................................ 8

*Phillips v. Audio Active Ltd.*,
   494 F.3d 378 (2d Cir. 2007) ................................................................................. 11

*Rates Tech. Inc. v. Cequel Commc'ns, LLC*,
   13 Civ. 0011 (ALC)(FM), 2014 WL 1494337 (S.D.N.Y. Mar. 25, 2014) ............... 14

*Russbeer Int'l LLC v. OAO Baltika Brewing Co.*,
   No. 07-CV-1212 (CBA), 2008 WL 905044 (E.D.N.Y. Mar. 31, 2008) ................... 14

*S.K.I. Beer Corp. v. Baltika Brewery*,
   612 F.3d 705 (2d Cir. 2010) ................................................................................. 14

*Scherk v. Alberto-Culver Co.*,
   417 U.S. 506 (1974) .............................................................................................. 11

*Skrodzki v. Marcello*,
   810 F. Supp. 2d 501 (E.D.N.Y. 2011) ..................................................................... 7

*Stardust Dance Prods. Ltd. v. Cruise Grps. Int'l, Inc.*,
   63 A.D.3d 1262 (3d Dep't 2009) ............................................................................. 7

*TradeComet.com LLC v. Google, Inc.*,
   435 F. App'x 31 (2d Cir. 2011) ............................................................................. 11

*United Bank of Kuwait, PLC v. James M. Bridges, Ltd.*,
   766 F. Supp. 113 (S.D.N.Y. 1991) ....................................................................... 8–9

*Universal Trading & Inv. Co., Inc. v. Credit Suisse (Guernsey) Ltd.*,
   560 F. App'x 52 (2d Cir. 2014) ............................................................................. 15

*Wego Chem. & Mineral Corp. v. Magnablend Inc.*,
   945 F. Supp. 2d 377 (E.D.N.Y. 2013) ................................................................... 14

*Zaltz v. JDATE*,
   952 F. Supp. 2d 439 (E.D.N.Y. 2013) ................................................................... 15

*Zottola v. AGI Grp., Inc.*,
   63 A.D.3d 1052 (2d Dep't 2009) ........................................................................... 10

## STATUTES

CPLR § 301 ........................................................................................................... 1, 6, 7

CPLR § 302 ................................................................................................................... 9

CPLR 302(a)(1) ...................................................................................................... 6, 7, 8

CPLR § 302(a)(2) ................................................................................................ 8

CPLR § 302(a)(3) ............................................................................................ 8, 9

CPLR 302(a)(3)(ii) ....................................................................................... 6, 8, 9

## TREATIES

United Nations Conference of International Commercial Arbitration, Convention on the
Recognition and Enforcement of Foreign Arbitral Awards of 1958 ....................................... 14

Defendants Artmentum GmbH ("Artmentum"), Michael Schulz ("Schulz"), Thomas

Burkhalter ("Burkhalter"), Eliane Pidoux ("Pidoux"), International Corporate Art Consulting

("ICAC"), Kevin Wynn ("Wynn"), and Klaus Maciejewski ("Maciejewski," together with

Artmentum, Schulz, Burkhalter, Pidoux, ICAC, and Wynn, the "Artmentum Defendants"), by

their attorneys Sullivan & Worcester LLP, submit this memorandum of law (1) in reply to

plaintiff Art Assure Ltd., LLC's ("Art Assure") opposition to the Artmentum Defendants'

Motion to Dismiss; and (2) in opposition to plaintiff Art Assure's cross motion to stay resolution

of the Motion to Dismiss for discovery and memorandum of law in support thereof (the "Cross

Motion Memo").[1]

## INTRODUCTION

This case has never had any justiciable connection to New York, and the Cross Motion

papers do not provide one. The Cross Motion Memo does not identify a single fact that

constitutes a specific transaction in New York that would warrant jurisdiction under CPLR

§ 302, and concedes entirely the lack of general jurisdiction pursuant to CPLR § 301. Art Assure

has offered no cognizable basis to avoid the arbitration provision to which it agreed, either,

because despite Art Assure's window dressing, this case is at its heart a breach of contract case.

The fantastical "damages" sought by Art Assure concern its speculative belief of how it *could*

have profited had it had the financial capability to consummate the deal outlined in the parties'

---

[1] Rather than submit an opposition to the plaintiff's cross-motion of no more than twenty-five pages, and a reply to the plaintiff's opposition to the Artmentum Defendants' Motion to Dismiss of no more than ten pages, the Artmentum Defendants submit this combined memorandum of eighteen pages. The Artmentum Defendants also submit herewith the Declaration of Kevin Wynn in Opposition to Cross Motion for Discovery (the "Wynn Cross Motion Decl."), the Declaration of Thomas Burkhalter in Opposition to Cross Motion for Discovery (the "Burkhalter Cross Motion Decl."), the Declaration of Michael Schulz in Opposition to Cross Motion for Discovery (the "Schulz. Cross Motion Decl."), and the Declaration of Nicholas M. O'Donnell in Opposition to Cross Motion for Discovery (the "O'Donnell Cross Motion Decl.").

agreement—the Memorandum of Understanding ("MOU") concerning the sale of the art collection in Hiroshima, Japan (the "Collection"). But that agreement contains an arbitration and forum selection provision that bars this case. Art Assure vaguely asserts the need for additional discovery, yet that discovery could yield no fruit because the Artmentum Defendants have demonstrated to the Court their complete absence in New York. Art Assure's quixotic exercise could at most procure the same information that the Court already has.

At the end of the day, Art Assure has neither adduced nor made the slightest offer of proof that could warrant the fishing expedition they seek. The transparent purpose of the entire enterprise is instead to retaliate against the Artmentum Defendants because Art Assure principal Asher Edelman ("Edelman") finds embarrassing his own financial shortcomings that led to the MOU's termination. Edelman and Art Assure play a shell game in the Cross Motion Memo with the Affidavit of Silvio Schneider (the "Schneider Affidavit" or "Schneider Aff.") to distract the Court in this regard. But the Schneider Affidavit is neither relevant to the jurisdictional question, nor revelatory about the transaction. What is instructive is the misdirection that Art Assure hopes it will create, when in fact it only makes a handful of narrow and unsurprising averments. It certainly does not warrant jurisdictional discovery.

## BACKGROUND[2]

The Cross Motion Memo and the papers in support—principally the Affidavit of Asher B. Edelman (the "Edelman Affidavit" or "Edelman Aff.")—make only passing references to actions of the Artmentum Defendants that can even be described as tangentially connected to the United States. Not a single one connects any acts by the Artmentum Defendants to New York.

---

[2] The Artmentum Defendants refer the Court to the Background section of their Memorandum in Support of Motion to Dismiss (Docket No. 17), which they incorporate by reference here, for the relevant jurisdictional facts.

Instead, Edelman indulges his penchant for attention by talking about *himself* and *his* activities. Edelman refers to the initial solicitation that led to the MOU, but does not claim that any of that interaction took place in New York—because it happened entirely in Switzerland. Edelman Aff. at ¶ 17; *see also* Declaration of Eliane Pidoux in Support of Motion to Dismiss (Docket No. 20) at ¶¶ 5–8. Edelman points to an e-mail dated November 12, 2013 that he sent to Burkhalter, Schulz and Pidoux. Edelman Aff. at ¶ 42, Exhibit J. In that e-mail, however, Edelman merely confirms what the Artmentum Defendants pointed out in the moving papers: that the first meeting after the July 4, 2013 meeting in Switzerland was in Germany. *Id.* (*i.e.*, "my trip to Frankfurt").

With regard to that first meeting, Art Assure has filed the attorney-client memorandum about it that was prepared by Benjamin Dürig, Edelman's Swiss attorney. *Id.* at ¶ 40, Exhibit H. Apart from the inexplicable decision to waive Art Assure's and Edelman's attorney-client privilege, and their right to assert attorney work product, Dürig's notes simply confirm that the pivotal meeting took place exactly where the Artmentum Defendants have already advised the Court that it did: at Burkhalter's office in Zürich. *Id.*

Edelman claims that Burkhalter "maintains an affiliation with a Seattle law firm. . . ." Edelman Aff. at ¶ 10. Edelman goes on to include a printout from the website of Burkhalter's Zürich law practice, which states unremarkably that Burkhalter (a Swiss attorney) has "close and intensive cooperation with law firms and experts in China, the UK, Germany, USA and the Middle East. . . ." *Id.* at ¶ 11, Exhibit A. Edelman also finds noteworthy that Burkhalter's website is in English. *Id.* at ¶ 11. Edelman ends by claiming that Burkhalter "maintains a relationship with Ian Quattorochi who has a dealership in fine arts in the United States and advertises the sale of fine art through the [I]nternet." *Id.* at ¶ 12. Ian Quattorochi Fine Art is in

St. Louis, Missouri. Edelman also believes that he knows that Burkhalter "offers legal advice to clients all over the world." *Id.* at ¶ 63. Edelman, of course, does not offer the basis for his supposed knowledge to that effect, and in fact Burkhalter advises clients where he is licensed to practice law: Switzerland. Declaration of Thomas Burkhalter in Support of Motion to Dismiss (Docket No. 22) at ¶ 4. None of these assertions—even taken in the light most favorable to Art Assure—have the slightest thing to do with New York.

Edelman conjectures that Wynn "maintains a direct relationship with Robert Steele [("Steele")], a gallery owner in New York with a last known address of 511 West 25th Street, New York." *Id.* at ¶ 15. *The Robert Steele Gallery closed in 2009. See* Wynn Cross Motion Decl. at ¶ 5. Edelman says nothing of what this relationship is, or Wynn's activities, or where those activities took place. In fact, Steele is an acquaintance of Wynn's, no more. *Id.* at ¶¶ 3–4. Moreover, it was Steele who contacted Wynn to let him know that Al Holland—CEO of First Dallas Merchant Banque and signatory of the very letter to DZ Privatbank (Schweiz) AG ("DZ Privatbank") purporting to vouch for Art Assure's bona fides that led to the termination of the MOU (the "First Dallas Letter")—was peddling the Collection in the art world without authorization. *Id.* at ¶ 6. Edelman adds that the Artmentum Defendants "have extensive contacts in the United States." Edelman Aff. at ¶ 50. Needless to say, these "contacts" are not identified or explained, but Art Assure seems to place import on the geography of the defendants' LinkedIn connections. Edelman provides a profile of Wynn that Edelman presumably found on the Internet—which makes no mention of New York at all—without authenticating or describing it in his affidavit. *Id.* at Exhibit B.

Edelman points to a passing reference on Artmentum's website about "offices and partners" in various places, including the United States. *Id.* at ¶ 52, Exhibit L. There is no

mention of New York on the web page on which he relies, however.  Edelman claims further that at one point that Artmentum had a website that "disappeared" in January of 2014, something he claims to have gleaned from an "investigation."  *Id*. at ¶ 56, Exhibit M.  This is flatly incorrect—the [www.Artmentum.com](www.Artmentum.com) website is visible even today.  *See* Burkhalter Cross Motion Decl. at ¶ 3, Exhibit 2.  Nor does Edelman claim that Exhibit M—which purports to be a "Screenshot History" but which is completely illegible—says anything about New York.  It does not.

Confusingly, Edelman posits that the Artmentum Defendants "were negotiating with Christie's in New York" (*Id.* at ¶ 67), but later, in burnishing his own role, claims that *he* was the one doing so.  *Id.* at ¶ 71.  The Court need not mind these contradictory and self-aggrandizing assertions.  Edelman says nothing about the nature or location of the Artmentum Defendants' conduct in this supposed sequence of events.  Lastly, Edelman identifies Erica Tanner as an Artmentum employee (whom Edelman chose not to sue) who "maintains over 100 international art dealings connections."  *Id.* at ¶ 64.  These "connections" are not identified or explained, least of all in relation to the MOU or the Collection.

Edelman spins a tale of the transmission of the First Dallas Letter through the SWIFT system—a system that is for transferring money, not sending letters—but in any event the letter itself say that it was sent "VIA FAX."  *Id.*, Exhibit D.  It was also sent *to Switzerland*, and not by any of the Artmentum Defendants.  *Id.*

The remaining balance of Edelman's affidavit is devoted to talking about what *he* did in New York.  He describes preparations that *he* supposedly made, e-mails, phone calls, and letters that *he* supposedly sent or received, and efforts *he* possibly made to engage third parties such as Sotheby's, Christie's, First Dallas Merchant Banque, or Cantor Fitzgerald.  *See id.* at ¶¶ 21, 24–30, 31, 35–36, 41, 71.

The last tactic that Art Assure employs is the red herring of DZ Privatbank's role. For starters, it is the Complaint, not any position taken by the Artmentum Defendants in the pending motion, that the Schneider Affidavit explicitly contradicts. *Id.* at ¶ 15 ("DZ PRIVATBANK never "rejected the letter" as alleged in paragraph 28 of the Complaint."). The Schneider Affidavit says nothing of any relevance to the jurisdictional questions, since no one would attribute the sending of the First Dallas Letter to the Artmentum Defendants. The Schneider Affidavit also confirms that Art Assure sued DZ Privatbank for no reason, stating that DZ Privatbank views itself as an "aggrieved party" in Art Assure's lawsuit.

## ARGUMENT

### I. THERE IS NO PERSONAL JURISDICTION OVER THE ARTMENTUM DEFENDANTS

Art Assure's factual allegations concerning jurisdiction are either irrelevant or are contradicted by the MOU, and its legal assertions are equally infirm. Tellingly, the headings in the Cross Motion Memo confirm the speculative nature of this case: "There is ***Potentially*** Jurisdiction Over These Defendants"; "There ***May Be*** Jurisdiction Under CPLR 302(a)(1)"; and "There ***May Be*** Jurisdiction Under CPLR 302(a)(3)(ii)." Cross Motion Memo at pp. 4, 6 (emphasis added). The Edelman Affidavit deploys the same ambivalence ("There is Potential Jurisdiction Over the Defendants in New York"). Edelman Aff. at p. 10. If Art Assure and Edelman do not know by now if there is jurisdiction, then it is past time for this case to end.

#### A. THERE IS NO JURISDICTION PURSUANT TO CPLR § 302(a)(1).

Having conceded entirely the question of general jurisdiction under CPLR §301, Art Assure reaches out for two provisions of the CPLR to argue for specific jurisdiction. Both contentions fail. Art Assure first argues that the Artmentum Defendants "may be" amenable to jurisdiction as non residents who "transact any business within the state or contract[] anywhere

to supply goods or services in the state." Cross Motion Memo at p. 4. Art Assure relies on four

cases in support, none of which aid its position. In *Deutsche Bank Securities* the court found

jurisdiction because the defendant, through electronic Bloomberg messaging (a New York

service), engaged in substantial securities transactions that were centered in New York.

*Deutsche Bank Secs., Inc. v. Mont. Bd. of Invs.*, 21 A.D. 3d 90 (1st Dep't 2005). Clearly, nothing

about the instant transaction was centered in New York, and courts in this Circuit have declined

to extend *Deutsche Bank* under similar circumstances. *Skrodzki v. Marcello*, 810 F. Supp. 2d

501, 513 (E.D.N.Y. 2011) (declining to find jurisdiction under 302(a)(1) where "defendant's

contacts with New York consisted of telephone calls, fax transmissions, and correspondence in

connection with the negotiation of a contract that has a center of gravity well outside the state");

*Credit Suisse Secs. v. Hilliard*, 469 F. Supp. 2d 103, 109 (explaining why *Deutsche Bank* is the

exception to the rule). The remaining cases rest upon the physical presence of the respective

defendants in New York. *Cosmetech Int'l LLC v. Der Kwei Enter. & Co., Ltd.*, 943 F. Supp. 311

(S.D.N.Y. 1996); *Stardust Dance Prods. Ltd. v. Cruise Grps. Int'l, Inc.*, 63 A.D.3d 1262 (3d

Dep't 2009); *see also HBK Master Fund L.P. v. Troika Dialog USA, Inc.*, 85 A.D.3d 665 (1st

Dep't 2011) (physical presence established by subsidiary).

   None of the Artmentum Defendants were in New York in connection with the

transaction, they have no subsidiaries, and Art Assure makes no attempt to rebut their showing in

that respect. Accordingly, the entirety of Art Assure's authority is irrelevant. Instead, Art

Assure alleges that the "Artmentum Defendants contacted [sic] to supply goods (the Collection)

to New York." Cross Motion Memo at p. 5. But the MOU clearly provides that the Collection

would have been "transported to *Switzerland*" after "ArtAssure [] deposit[ed] the full purchase

price… in *Zurich/Switzerland*…. Upon closing of the Transaction in *Switzerland*…." MOU, §§ 6

& 7 (emphasis added). The Artmentum Defendants at most contracted to supply goods *from Japan to Switzerland*, not New York. Art Assure has failed its burden under CPLR § 302(a)(1).

### B.    THERE IS NO JURISDICTION UNDER CPLR § 302(a)(3)(ii), EITHER.

Art Assure once again gives a breezy overview of several cases for the timid assertion that there "may be jurisdiction under CPLR § 302(a)(3)(ii)." These cases also fail to warrant the conclusion that Art Assure meekly proposes.

Several of the cited cases do not even discuss, let alone make any findings pursuant to CPLR § 302(a)(3). *Park-Bernet Galleries, Inc. v. Franklyn*, 26 N.Y.2d 13 (1970) (finding personal jurisdiction under § 302(a)(1) where defendant was active participant in auction held in New York through open phone line and agent was physically present at auction); *Gasarch v. Ormand Indus., Inc.*, 346 F. Supp. 550, 552 (finding personal jurisdiction under § 302(a)(2) where defendant, through an agent, commits a tortious act *within* the state); *Ehrlich-Bober & Co. v. Univ. of Houston*, 49 N.Y.2d 574 (finding personal jurisdiction under § 302(a)(1) where transaction was centered in New York—money was paid in New York, securities were delivered in New York, and repurchases were to take place in New York).

The remaining cases reaffirm that "under § 302(a)(3), an injury does not occur 'within the state' simply because that is where the plaintiff is located or suffered economic loss." *Levisohn, Lerner, Berger & Langsam v. Med. Taping Sys., Inc.*, 10 F. Supp. 2d 334, 343 (S.D.N.Y. 1998); *United Bank of Kuwait, PLC v. James M. Bridges, Ltd.*, 766 F. Supp. 113, 116 (S.D.N.Y. 1991) ("New York courts uniformly hold that the situs of a nonphysical, commercial injury is where the critical events associated with the dispute took place. . . . The occurrence of financial consequences in New York due to the fortuitous location of plaintiffs in New York is not a sufficient basis for jurisdiction under § 302(a)(3) where the underlying events took place

outside New York.") (internal citations omitted). Plaintiff's repeated reliance on its own New York residency is thus insufficient.

Finally, § 302(a)(3)(ii) requires that the defendant "expects or should reasonably expect the act to have consequence in the state." Plaintiff's only oblique reference to this requisite is "in dealing with a New York resident, Art Assure, [the Artmentum Defendants] could expect to defend a lawsuit here." Cross Motion Memo at p. 8. As discussed above, plaintiff's residence is insufficient to trigger personal jurisdiction. In *Cleopatra Kohlique, Inc. v. New High Glass, Inc.* the court found defendant should have reasonably expected plaintiff to be injured in New York, because that is where defendant shipped the flawed goods. 652 F. Supp. 1254, 1257 (E.D.N.Y. 1987). As discussed below, given the contemplated delivery of the Collection to Switzerland (not New York), and the alternative dispute resolution and forum selection clause of the MOU dictating arbitration in Switzerland, defending a lawsuit in New York is quite literally the last thing that the Artmentum Defendants would reasonably have expected.

## C. ART ASSURE'S CLAIMS OFFEND DUE PROCESS.

Whether or not Art Assure could squeeze its claims into CPLR § 302, personal jurisdiction still will not lie where to exert it would offend due process. So it is here, because the Artmentum Defendants did not purposefully avail themselves of the privilege of doing business in New York, nor was it foreseeable that they would be haled into court in New York. *See* Memorandum of Law in Support of Artmentum Defendants' Motion to Dismiss (Docket No. 17) at pp. 16–17. To contest this point, Art Assure points to a handful of cases where defendants had significant ongoing contacts with New York. In *Allied Dynamics v. Kennametal, Inc.*, the court found the minimum contacts analysis satisfied where defendant engaged in contract negotiations in New York, agreed to ship goods to New York, and actually sent those goods to New York. 965 F. Supp. 2d 276, 296 (E.D.N.Y. 2013). None of those contacts are analogous to the

9

Artmentum Defendants' negotiation of a contract in Switzerland to deliver the Collection to Switzerland. In *Zottola v. AGI Grp., Inc.*, the court found sufficient minimum contacts based on the fact that defendants agreed to deliver the subject boat in New York, transferred money to a New York bank branch, and, finally, the defendant did transfer the boat to plaintiff at his New York address. 63 A.D.3d 1052, 1054 (2d Dep't 2009). Again, the distinctions between that case and the Artmentum Defendants are clear. Finally, in *Deutsche Bank Sec., Inc. v. Mont. Bd. of Invs.*, the court found, among other things, that "over the preceding 13 months, [defendant] had engaged in approximately eight other bond transactions with [plaintiff's] employee in New York." 7 N.Y.3d 65, 72 (2006). No such record exists in this case.

Haling the Artmentum Defendants into court in New York offends Due Process because the Artmentum Defendants could scarcely have made clearer their expectation that this was a European transaction, any disputes over which would be adjudicated in Zürich. Lastly, whatever method third party First Dallas Merchant Banque used to send the First Dallas Letter (the lone averment that Art Assure recites in opposition to the Artmentum Defendants' argument that the case should also be dismissed under the *forum non conveniens* doctrine) has no bearing on this analysis at all. Amazingly, in a case with a $204 million breach of contract claim, Art Assure dismisses the importance of the forum selection clause by arguing that the clause "concerns disputes under [the MOU] and not the dispute in the case at bar." Cross Motion Memo at p. 13. The Complaint says otherwise.

## II.     ART ASSURE AND EDELMAN AGREED TO ARBITRATE THEIR CLAIMS

Ultimately, however, Art Assure has no answer for an unavoidable fact: the forum selection and alternative dispute resolution clause in which Artmentum and Art Assure agreed to

arbitrate any related disputes in Switzerland.[3]  The obvious reason for Art Assure's dramatic

allegation of "fraud" is to distract from the simple fact that Art Assure is seeking breach of

contract damages of more than $200 million.  To have a breach, there must be a contract, but this

contract (the MOU) unequivocally mandates arbitration of all related disputes.

The Second Circuit has established a four-part test to determine whether to dismiss a

claim based on a forum selection clause: (1) "whether the clause was reasonably communicated

to the party resisting enforcement"; (2) whether the clause was "mandatory or permissive," (3)

"whether the claims and parties involved in the suit are subject to the forum selection clause" and

(4) "whether the resisting party has rebutted the presumption of enforceability by making a

sufficiently strong showing that 'enforcement would be unreasonable or unjust, or that the clause

was invalid for such reasons as fraud or overreaching.'"  *Phillips v. Audio Active Ltd.*, 494 F.3d

378, 383–84 (2d Cir. 2007).

The forum selection clause in the MOU provides: "*Any* dispute, controversy, or claim

*arising out of, or in relation to*, this MOU… *shall be* resolved by arbitration in accordance with

the Swiss Rules of International Arbitration of the Swiss Chambers' Arbitration Institution… the

seat of arbitration shall be Zurich[.]"  MOU, § 10.6 (emphasis added).  The clause was

reasonably communicated to Art Assure.  *See, e.g., Crewe v. Rich Dad Educ., LLC*, 884 F. Supp.

2d 60, 87 (S.D.N.Y. 2012).  Edelman, on behalf of Art Assure, knowingly and voluntarily

entered into the contract.  Edelman initialed each page of the contract, including the page on

which the forum selection clause is found.  The clause is written in plain language and is

---

[3] While the clause that references arbitration, this does not change the following analysis.
*TradeComet.com LLC v. Google, Inc.*, 435 F. App'x 31, 34 (2d Cir. 2011) (quoting *Scherk v.
Alberto-Culver Co.,* 417 U.S. 506, 519 (1974)).  ("[A]n agreement to arbitrate ... is, in effect, a
specialized kind of forum-selection clause....").

preceded by an underlined header. As to the second factor, "[t]he use of the word 'shall' makes the clause classically mandatory." *Id.*

With regard to the third factor, the clause applies equally to plaintiff's claims for breach of contract and its claim for fraud, against signatories and non-signatories. *Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 724 (2d Cir. 2013) ("A contractually-based forum selection clause also covers tort claims against non-signatories if the tort claims 'ultimately depend on the existence of a contractual relationship' between the signatory parties."). In a case such as this, with broadly drafted language encompassing "*any* dispute… arising out of, or in relation to, this MOU" there can be no doubt that the forum selection encompasses both breach of contract and fraud claims. *Bluefire Wireless, Inc. v. Cloud9 Mobile Commc'ns, Ltd.*, 09 CIV. 7268 (HB), 2009 WL 4907060, at *3 (S.D.N.Y. Dec. 21, 2009) (fraud and other tort claims covered by forum selection clause where resolution of the claims related to "interpretation of the contract" or "the tort claims involve the same operative facts as a parallel breach of contract").

Faced with this, Art Assure contends that the provision is unenforceable because the individual defendants are non-signatories who cannot be compelled to arbitrate. Cross Motion Memo at p. 13. This is absurd. Burkhalter, Schulz, Pidoux, Wynn, and Maciejewski are not trying to avoid the arbitration provision, Art Assure is. If the Court dismissed the Complaint pursuant to the ADR provision, *and* Art Assure brought the same claims in arbitration, the Artmentum Defendants would be judicially estopped from resisting that arbitration.

Art Assure tries to salvage this argument by citing *Motorola Credit Corp. v. Uzan* in which the Second Circuit discussed invocation of an arbitration clause under Swiss law. 388 F.3d 39, 51–53 (2d Cir. 2004). Art Assure quotes the opinion for the proposition that "defendants as nonsignatories to the agreements may not invoke the arbitration clauses contained

in those agreements." Cross Motion Memo at p. 13, citing *Motorola*, 388 F.3d at 51. This is

materially untrue. It is Art Assure who has asserted a claim; whether or not Burkhalter, Schulz,

Pidoux, Wynn, or Maciejewski *could* bring a claim in arbitration against Art Assure is

irrelevant.[4] This gives the lie to Art Assure's protestations that the Artmentum Defendants

should somehow be punished for not initiating an arbitration. The Artmentum Defendants had

no quarrel over the MOU until Edelman started claiming fraud to hide his own financial reversal

(after Artmentum took the necessary steps to move on from dealing with Edelman).

The *Motorola* case is also consistent with the notion that signatories, such as Art Assure,

are bound by the terms of their contractual agreement to submit to arbitration. *Motorola*, 388

F.3d at 52 citing Swiss Federal Tribunal, decision of May 19, 2003, 4C.40/2003, No. 4.1. That

court went on to state that "a nonsignatory may be required to arbitrate." *Motorola*, 388 F.3d at

52. This obviates Art Assure's specious concerns about having to proceed on a piecemeal basis.

The reality is Art Assure has flouted its contractual obligation to arbitrate this claim because it

simply does not want to submit to a process where fee shifting will be mandatory.

Finally, with the first three elements established, the burden shifts to Art Assure to

demonstrate that the clause should be invalidated. "Where forum selection clauses 'grow out of

arms-length negotiations between sophisticated business persons, such a showing is difficult to

make.'" *Russbeer Int'l LLC v. OAO Baltika Brewing Co.*, No. 07-CV-1212 (CBA), 2008 WL

905044, at *4 (E.D.N.Y. Mar. 31, 2008). Though Art Assure's response to this point is not at all

clear, it seems to believe that the alleged fraud relating to the contract somehow invalidates the

forum selection clause. This is wrong. "[T]he case law in this Circuit is abundantly clear that an

---

[4] "A plaintiff who brings [a] suit in a forum other than the one designated by [a] forum selection clause carries the burden to make a strong showing in order to overcome the presumption of enforceability." *Greater N.Y. Auto. Dealers Ass'n. v. Envtl. Sys. Testing, Inc.*, 211 F.R.D. 71, 94 (E.D.N.Y. 2002).

allegation of fraud in the inducement of a contract in general is insufficient to invalidate a forum selection provision; rather, the party must show that the forum selection clause itself was the product of fraud." *Bluefire*, 2009 WL 4907060, at *3 (S.D.N.Y. Dec. 21, 2009) (collecting cases). Art Assure has made no showing whatsoever regarding fraud *in relation to the forum selection clause itself*, however. *See, e.g., S.K.I. Beer Corp. v. Baltika Brewery*, 612 F.3d 705, 712 (2d Cir. 2010) (affirming dismissal on forum selection clause).

This conclusion is underscored by the United Nations Conference of International Commercial Arbitration, Convention on the Recognition and Enforcement of Foreign Arbitral Awards of 1958 (the "New York Convention"). The New York Convention provides that "[e]ach Contracting State shall recognize an agreement in writing under which the parties undertake to submit to arbitration all or any differences which have arisen or which may arise between them in respect of a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration." New York Convention, Art. II(1). Both the United States and Switzerland are signatories to the New York Convention.

## III. NOTHING WARRANTS A FISHING EXPEDITION TO RESTATE THE RECORD

Having failed to make a *prima facie* showing of jurisdiction it its Complaint, Art Assure proposes discovery that could, at most, repeat what the Artmentum Defendants provided to the Court with the Motion to Dismiss: that none of them have any justiciable contact with New York. *See Wego Chem. & Mineral Corp. v. Magnablend Inc.*, 945 F. Supp. 2d 377, 386 (E.D.N.Y. 2013). Jurisdictional discovery is not permitted to answer questions already answered by affidavit. *Rates Tech. Inc. v. Cequel Commc'ns, LLC*, 13 Civ. 0011 (ALC)(FM), 2014 WL 1494337, at *10 (S.D.N.Y. Mar. 25, 2014). Art Assure contends that the denials of contact with New York are contradicted by websites indicating "clients all over the world including the

United States." Cross Motion Memo at p. 5. First, there are no such contradictions. The websites that Art Assure waves before the Court say nothing about New York. Even giving Art Assure every benefit of the doubt as to the Artmentum Defendants' contact with the *United States* generally, they still would not establish personal jurisdiction over these defendants *in New York. See Universal Trading & Inv. Co., Inc. v. Credit Suisse (Guernsey) Ltd.*, 560 F. App'x 52, 55 (2d Cir. 2014) ("[A]n allegation that a defendant solicits business in the United States is not the same as one that the defendant conducts business in New York, and the district court correctly deemed the allegation insufficient to support specific jurisdiction."). Plaintiff's allegations concerning SWIFT are similarly irrelevant, and once again flatly contradicted by its own evidence (the First Dallas Letter states unambiguously that it was sent by facsimile).

What could jurisdictional discovery add to this analysis? The discovery that Art Assure seeks would tread over the same ground already laid before the Court in the motion papers: Art Assure states its intention to seek "[i]nformation such as visits to the United States/New York, defendants' international marketing activities and sales and defendants' relationships with entities and/or individuals in New York." Cross Motion Memo at p. 3. Those topics are addressed comprehensively in the Artmentum Defendants' motion papers and supporting declarations, and do not justify the speculative exercise that Art Assure proposes. *Zaltz v. JDATE*, 952 F. Supp. 2d 439, 448 & n.5 (E.D.N.Y. 2013) ("Because plaintiff has alleged no facts that would provide grounds to invalidate the forum selection clause, discovery and/or an evidentiary hearing on this issue is unnecessary.") (collecting cases).

## IV. ART ASSURE'S RESPONSE IS CONSISTENT WITH ITS PRINCIPAL'S RECENT LITIGATION OVER HIS FINANCIAL SHORTCOMINGS

If there were any remaining doubts about the merits of Art Assure's arguments, the use of the Schneider Affidavit and its supposed "revelations" underscore the distraction that Art Assure

hopes to create in response to the Motion to Dismiss. It says nothing of any relevance to the jurisdictional questions, since no one would attribute the sending of the First Dallas Letter to the Artmentum Defendants. Notably, the Schneider Affidavit explicitly contradicts Art Assure's Complaint with regard to the First Dallas Letter, not any position taken by the Artmentum Defendants in the pending motion. *Id.* at ¶ 15 ("DZ PRIVATBANK never "rejected the letter" as alleged in paragraph 28 of the Complaint."). Given this, it is telling what Edelman did with the Schneider Affidavit, which was ostensibly procured to respond to a Fed. R. Civ. P. 12(b)(2) motion. Edelman sent an e-mail to a *Wall Street Journal* reporter on August 9, 2014, attaching the Schneider Affidavit and blind copying the Artmentum Defendants. *See* Wynn Cross Motion Decl. at ¶ 10; Burkhalter Cross Motion Decl. at ¶ 2, Exhibit 1. He describes the Schneider Affidavit as "A REMARKABLE AND SURPRISING TURN OF EVENTS." (caps in the original). Other press inquiries followed.

The Schneider Affidavit is used for the purpose of conveying the impression that DZ Privatbank had nothing to do with the Collection, and was somehow surprised to hear of anything to do with it. This is misdirection because the Schneider Affidavit does not actually say that, *and* because DZ Privatbank was involved in Artmentum's efforts with regard to the Collection from 2008 until Artmentum closed its account there. *See* Schulz Cross Motion Decl. at ¶¶ 3-6. Too cleverly, Schneider stops short of disavowing entirely his relationship to the Collection—a wise choice given his own personal correspondence about the Collection in the past—instead narrowly stating that he did not expect the First Dallas Letter as such. This is both unsurprising and unremarkable. Artmentum had not told DZ Privatbank about the First Dallas Letter because Artmentum itself was awaiting Art Assure's financial "comfort letter." *Id.* at ¶ 7. Had the First Dallas Letter evidenced Art Assure's capability, there might have been cause for

further involvement with DZ Privatbank, but the letter was so facially defective that there was nothing further to discuss. *Id.* at ¶¶ 7-8.

Art Assure's efforts to change the subject make more sense from a broader perspective. Notwithstanding Edelman's self-curated image in the art world, which includes fawning profiles in the *Wall Street Journal* and consistent references to his role as the supposed "inspiration" for the fictional character Gordon Gekko, it appears that his business ventures have been on increasingly shaky ground in recent years following what the *Los Angeles Times* called "big financial reversals." O'Donnell Decl. at ¶ 3, Exhibit 1 ("Edelman's Losses Said to Augur Change"). Despite the public profile he courts, Edelman's litigation of late has increasingly focused on his failure to pay his debts. For example, in 2013, Edelman's ex-wife sued him alleging $303,859 in unpaid damages related to their separation agreement. *See* O'Donnell Cross Motion Decl. at ¶ 4, Exhibit 2.[5] As coverage of that case indicated, "[t]he business titan-turned-art dealer has a history of cash-flow crises: A bank sued him for $3 million in missed loan payments in 2010 and he recently defaulted on a Manhattan townhouse lease." *Id.* at ¶ 6, Exhibit 4. The bank case referenced in the *New York Post* article was *Emigrant Bank Fine Art Finance v. Asher Edelman*, Index No. 600607-2010 (New York Supreme Court, Manhattan County). *Id.* at ¶ 7, Exhibit 5. Emigrant Bank Fine Art Finance, LLC ("Emigrant Bank") obtained a judgment for $575,000 against Edelman and his prior company for their failure to repay a loan. *Id.* In a refrain that rings true to this case, Emigrant Bank noted that rather than respond to its substantive claims, Edelman "has made false claims that are irrelevant to the motion at hand, and which appear designed to delay and divert attention." *Id.* at ¶ 8, Exhibit 6 (Affidavit of Hope Tate at ¶ 5). Also eerily familiar, the Emigrant Bank affiant notes that "Despite Edelman's unsupported

---

[5] That case was dismissed as premature for failure to provide notice of Edelman's default, but not on the merits of whether the debt was, in fact, paid. *Id.* at ¶ 5, Exhibit 3.

assurances, Edelman has not provided Emigrant with complete financial disclosures" or other evidence of his financial condition. *Id.* at ¶ 6.

Artmentum was prudent to conduct its due diligence because Edelman's recent ventures share a common theme: overstating his finances. Art Assure's effort to procure the Collection, only to fall flat for financial inability, fits in this recent trend—no doubt to Edelman's embarrassment. His aggressive response, similar to others when called to financial account, fits within Edelman's litigation playbook. The Artmentum Defendants are confident that the Court will not be so easily distracted.

**<u>CONCLUSION</u>**

For the foregoing reasons and those previously stated, the Artmentum Defendants respectfully request that the Court dismiss the Complaint against them in its entirety.

Dated: New York, New York          SULLIVAN & WORCESTER LLP
        August 29, 2014

                                      By:/s/Nicholas M. O'Donnell
                                         Nicholas M. O'Donnell
                                         Nita Kumaraswami
                                    One Post Office Square
                                    Boston, Massachusetts 02109
                                    Telephone: (617) 338-2800
                                    Facsimile: (617) 338-2880
                                    Email: nodonnell@sandw.com
                                                nkumaraswami@sandw.com

                                    *Attorneys for Defendants Artmentum GmbH,*
                                    *Michael Schulz, Thomas Burkhalter, Eliana Pidoux,*
                                    *International Corporate Art Consulting, Kevin*
                                    *Wynn, and Klaus Maciejewski*